[Cite as *State v. Williams*, 2020-Ohio-3359.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

HOMER E. WILLIAMS, JR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 CO 0001**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2018-CR-393

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Robert Herron*, Prosecutor and *Atty. Tammie Jones,* Assistant Prosecutor, Columbiana County Prosecutor's Office, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee, and

*Atty. Brian Smith*, Brian A. Smith Law Firm, LLC., 755 White Pond Drive, Suite 403, Akron, Ohio 44320, for Defendant-Appellant.

Dated:
June 12, 2020

**Donofrio, J.**

**{¶1}** Defendant-appellant, Homer Williams, appeals his convictions in the Columbiana County Common Pleas Court following a bench trial for one count of domestic violence and one count of possession of cocaine.

**{¶2}** On September 7, 2018, Officers Steven Adkins and Justin Watkins of the East Liverpool Police Department were dispatched to 440 East Avenue in East Liverpool, Ohio to respond to a domestic violence situation. Appellant resided in this home with the victim, Jackie Hayes (Hayes), and Hayes' 15 year-old granddaughter J.D. When Officers Adkins and Watkins arrived at the home, they saw four people on the front porch: appellant, Hayes, J.D., and J.D.'s friend Indya Spann (Spann).

**{¶3}** Officer Adkins interviewed Hayes separately from the other three people. Officer Adkins noted that she was originally calm when he arrived at the house. But when Officer Adkins pulled her aside to interview her, Hayes "seemed visibly shaken, started crying, almost, like hyperventilating." (Tr. 33). The collar on Hayes' shirt was stretched out and torn on the left side. After Officer Adkins interviewed Hayes, he instructed Officer Watkins to place appellant under arrest for domestic violence.

**{¶4}** Officer Watkins then searched appellant for weapons. Officer Watkins' search did not reveal anything illegal at this time. At the time of his arrest, appellant's shoes were on and properly tied. Upon placing appellant in the squad car, Officer Watkins noticed a burnt spoon on the passenger side floor. Officer Watkins instructed appellant to exit the vehicle and Officer Watkins removed the spoon. Officer Watkins did not notice any other items in the rear of the cruiser.

**{¶5}** When Officer Watkins arrived at the East Liverpool Police Department, he noticed that appellant's "left foot [came] out, and his shoe to be halfway on with his heel of the shoe smashed down, and his foot not to be all the way inside the shoe." (Tr. 61). Officer Watkins conducted another search of appellant inside the police station. This search revealed a small white rock in appellant's left shoe that was later determined to be cocaine.

Case No. 19 CO 0001

{¶6}     A Columbiana County Grand Jury indicted appellant for one count of domestic violence in violation of R.C. 2919.25(D)(4), a third-degree felony, and one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a), a fifth-degree felony. The domestic violence charge was elevated to a third-degree felony based on appellant's prior convictions for involuntary manslaughter and witness intimidation where the victim at the time of the offenses was his wife.

{¶7}     On December 5, 2018, the trial court held a bench trial.  In addition to Officers Adkins and Watkins, plaintiff-appellee, the State of Ohio, called Spann.  At the time of trial, Spann was 18 years-old.  Spann was spending the night at Hayes' home on the night of September 7, 2018.

{¶8}     At some point during the night, Spann and J.D. walked to a gas station to purchase food and drinks.  When they returned to the house but before they entered, Spann heard Hayes screaming "help me."  (Tr. 84).  When Spann and J.D. entered the house, "nothing was happening, but, like, [Hayes'] shirt was ripped and she had scratches."  (Tr. 86).

{¶9}     Spann also testified about Hayes' statements concerning the incident. She testified that Hayes said appellant was trying to take her money and then choked her.    Appellant objected to this line of questioning on the basis that it constituted hearsay but the trial court overruled his objection.

{¶10}    After the state called six witnesses, it moved to continue the trial because Hayes and J.D. had failed to appear after being subpoenaed.  The state indicated that J.D. was now residing with her biological mother in the Columbus, Ohio area and J.D.'s mother was willing to bring J.D. to court in order to testify.  The trial court granted the state's continuance over appellant's objection.

{¶11}    On December 11, 2018, appellant's trial continued.  J.D. and Officer Watkins were the only witnesses to testify on this date.  J.D. testified that appellant and Hayes were fighting at first because appellant wanted Hayes to give him some money. Once appellant and Hayes stopped fighting, J.D. and Spann walked to the store.  When J.D. and Spann returned, J.D. saw appellant choking Hayes and grabbing her by the shirt in the living room.  Appellant was on top of Hayes when J.D. and Spann returned.  Spann was behind J.D. when the two entered the living room.

{¶12}    The trial court found appellant guilty on both counts.  The court sentenced appellant to 30 months incarceration for domestic violence and 10 months incarceration for drug possession to be served consecutively for a total of 40 months incarceration. Appellant timely filed his notice of appeal on January 14, 2019.  Appellant now raises five assignments of error.

{¶13}    Appellant's first assignment of error states:

THE TRIAL COURT'S DECISION TO ALLOW HEARSAY STATEMENTS FROM JACKIE HAYES MADE TO INDYA SPANN WAS AN ABUSE OF DISCRETION.

{¶14}    Appellant argues that Spann's testimony about Hayes' statements amounted to inadmissible hearsay that should have been excluded.

{¶15}    The admission of evidence is within the discretion of the trial court and the court's decision will only be reversed upon a showing of abuse of discretion.  *State ex rel. Sartini v. Yost*, 96 Ohio St. 3d 37, 2002-Ohio-3317, 770 N.E.2d 584.  This includes rulings on hearsay issues.  *State v. Rupp*, 7th Dist. Mahoning No. 05 MA 0166, 2007-Ohio-1561, ¶ 78 citing *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151.  Abuse of discretion implies that the court acted in an unreasonable, arbitrary, or unconscionable manner. *Sartini* at ¶ 21.

{¶16}    Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Evid.R. 801(C).  Hearsay is generally not admissible at trial.  Evid.R. 802.

{¶17}    Spann's testimony about Hayes' statements is hearsay.  Spann testified that Hayes said appellant choked her.  Hayes' statements were made out of court and were offered to prove the truth of the matter asserted.  Namely, Hayes' out-of-court statements were offered to prove that appellant choked her.

{¶18}    But Spann's testimony was still admissible under the excited utterance exception to the hearsay rule.  An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Evid.R. 803(2).  An excited utterance is an exception to the hearsay rule.  Evid.R. 803(2).

**{¶19}** In this case, Hayes' statement to Spann that appellant choked her relate to the startling event of appellant choking her. Spann also laid a proper foundation that Hayes was under the stress of excitement when she made the statements. Spann testified that Hayes was crying, upset, had scratches on her chest, and her shirt was ripped through the middle. Additionally, Spann testified that she was outside of the house when she heard Hayes screaming "help me," walked into the house, saw Hayes, and Hayes began to tell her what had happened. The short time frame between when Spann heard Hayes scream and when Hayes told Spann what happened indicates that Hayes was under the stress of excitement of being choked when Hayes said appellant choked her. Because Spann's testimony about Hayes' statements qualify as an excited utterance, the trial court did not abuse its discretion by permitting this testimony.

**{¶20}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶21}** Appellant's second assignment of error states:

THE TRIAL COURT'S DECISION TO CONTINUE THE TRIAL TO ALLOW THE STATE TO OBTAIN THE ATTENDANCE OF ITS WITNESSES WAS AN ABUSE OF DISCRETION.

**{¶22}** Appellant argues that the state's basis to continue the trial, to permit the attendance of Hayes and J.D., was the result of the state's own negligence and the trial court abused its discretion by continuing the trial.

**{¶23}** "The standard of review for the decision to grant or deny a continuance is abuse of discretion." *State v. Barnes*, 7th Dist. Columbiana No. 98 CO 86, 2000 WL 748127 (May 19, 2000) citing *State v. Hook*, 33 Ohio App.3d 101, 514 N.E.2d 721 (10th Dist.1986).

**{¶24}** On November 19, 2018, the trial court scheduled appellant's trial for December 5, 2018. On November 27, 2018, eight days prior to trial, the subpoenas for both Hayes and J.D. were filed. Hayes and J.D. were served with their subpoenas on November 30, 2018.

**{¶25}** Appellant argues that because the state waited until eight days before trial to file the subpoenas for Hayes and J.D., the trial court's decision to continue the trial

constituted an abuse of discretion. Appellant argues that he was prejudiced by the granting of the continuance because the continuance permitted J.D. to testify and she was the only witness to testify that she saw appellant choke Hayes. Appellant cites no case law to support his argument that the granting of a continuance mid-trial in the state's favor in order to secure witness attendance constitutes an abuse of discretion.

{¶26} Hayes ultimately did not appear for trial, even after the continuance was granted. Therefore, the trial court granting the state's motion to continue as it pertains to Hayes is moot and this assignment of error will focus on whether the trial court abused its discretion to continue the trial in order to secure J.D.'s attendance.

{¶27} The state argued during its oral motion that, over the lunch hour on the first day of trial, counsel for the state received a phone call from J.D.'s mother. J.D.'s mother informed counsel for the state that J.D. now resided with her in the Columbus, Ohio area. The fact that J.D. is a minor who lived several hours away made her attendance at trial dependent on her mother.

{¶28} Additionally, as the state points out, appellant's counsel stated twice on the record that he would have preferred to have more time before trial in order to better review the evidence.

{¶29} Moreover, the trial court continued the trial for only six days. This is a reasonably short continuance under the circumstances. Based on the above, the trial court did not abuse its discretion by granting the state's motion to continue.

{¶30} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶31} Appellant's third assignment of error states:

THE TRIAL COURT'S DECISION TO ALLOW TESTIMONY AS TO APPELLANT'S PRIOR BAD ACTS WAS AN ABUSE OF DISCRETION.

{¶32} Appellant argues that the state elicited evidence prohibited by Evid.R. 404(B) and the trial court abused its discretion by permitting such evidence.

{¶33} As this assignment of error challenges the admission of evidence submitted at trial, it is subject to the same abuse of discretion standard of review set forth in appellant's first assignment of error.

**{¶34}** During the first day of trial, the state called Detective Darin Morgan of the East Liverpool Police Department. Detective Morgan was involved in a criminal investigation that led to appellant's arrest in 1998. A grand jury then indicted appellant on three charges: aggravated murder, intimidation of a victim or witness, and trafficking in drugs (the prior criminal case).

**{¶35}** Detective Morgan began testifying about his knowledge concerning the prior criminal case. Appellant objected arguing that the testimony was about other bad acts evidence and was inadmissible. The state argued that because appellant was charged with third-degree felony domestic violence, it had to show that appellant had two prior convictions for violent offenses where appellant was related to the victim. The state also argued that the testimony regarding appellant's convictions in the prior criminal case was not being offered for propensity purposes but to show plan, scheme, or design. The trial court overruled the objection.

**{¶36}** Detective Morgan testified that the victim in the aggravated murder and intimidation charges was Angela Williams. At the time, Angela Williams was appellant's wife. Appellant was then convicted of involuntary manslaughter and intimidation in the prior criminal case. The state introduced into evidence certified copies of the indictment and judgment entry of conviction in the prior criminal case.

**{¶37}** Detective Morgan also testified about a conversation appellant had with a man named "Cakey" Hayes during the events of the prior criminal case. Appellant went to speak with Cakey Hayes after Angela's death. Cakey Hayes gave an official police statement during the prior criminal case. Detective Morgan testified about this statement:

**Q:** Was it conversation about what [appellant] had done?

**A:** Yes, ma'am.

**Q:** He, [appellant]?

**A:** Yes, ma'am.

**Q:** And what was the nature of the statement [appellant] made to Cakey Hayes?
**Mr. Wise:** Objection.

Case No. 19 CO 0001

**The Court:** Overruled.

**A:** That [appellant] had choked the victim and - - I believe that he had choked the victim and - -

**Mr. Wise:** Objection, Your Honor. Now, he's saying what he believed. I mean this is, again, a statement of which - -

**The Court:** Sustained.

**Q:** Do you know what the nature of the statement was that [appellant] made to Cakey Hayes?

**A:** Part of the statement was that he choked her. I don't remember the rest of the involvement there.

(Tr. 119-120).

{¶38} The state argues that the trial court excluded the testimony regarding appellant choking Angela Williams. But the above portion of the transcript shows otherwise. After the trial court sustained appellant's objection, Detective Morgan testified appellant told Cakey Hayes that he choked Angela Williams.

{¶39} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

{¶40} The state argues that this evidence was admissible pursuant to Evid.R. 404(B) in order to show appellant's plan, scheme, or design. But there was no other evidence to indicate how appellant choking Angela Williams approximately 20 years before his trial in this case constitutes a plan, scheme, or design.

{¶41} But the admission of appellant's statement that he choked Angela Williams was harmless error. Harmless error is defined as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" *State v. Morris*, 141 Ohio St.3d 399,

2014-Ohio-5052, 24 N.E.3d 1153, ¶ 23 quoting Crim.R. 52(A). Harmless error shall be disregarded. *Id.*

{¶42} First, appellant elected to have a bench trial in this matter. Any prejudicial effect of Detective Morgan's testimony about appellant choking Angela Williams was minimized by the lack of a jury in this trial. When the trial court is the trier of fact, there is a presumption that the court disregards improper hearsay. *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61.

{¶43} Second, assuming Detective Morgan's testimony about appellant choking Angela Williams was excluded, the state introduced into evidence certified copies of the indictment and the judgment entry of appellant's convictions for involuntary manslaughter and intimidation of a crime victim or witness in the prior criminal case. The state also elicited testimony that Angela Williams was appellant's wife during the prior criminal case. Prior bad acts are admissible if they are relevant to proving guilt of the offense in question. *State v. Craig*, 4th Dist. Gallia No. 01CA8, 2002-Ohio-1433, ¶ 11 citing *State v. Gardner*, 59 Ohio St.2d 14, 391 N.E.2d 337 (1979).

{¶44} Pursuant to R.C. 2919.25(D)(4), the state had to admit evidence that appellant had two prior convictions for domestic violence or offenses substantially similar to domestic violence. The judgment entry of conviction and testimony that Angela Williams was appellant's wife satisfies this element. Assuming the testimony about appellant choking Angela Williams was excluded, Detective Morgan still testified that the victim in the prior criminal case was appellant's wife and the judgment entry of conviction shows appellant was convicted of two offenses substantially similar to domestic violence.

{¶45} Accordingly, appellant's third assignment of error is without merit and is overruled.

{¶46} Appellant's fourth assignment of error states:

> APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶47} Appellant argues that his prior convictions for involuntary manslaughter and intimidation of a crime victim do not meet the revised code definition of two or more violations or offenses under R.C. 2919.25(D)(4) because the convictions were part of a

single judgment entry. Therefore, he argues that his third-degree felony domestic violence conviction is not supported by sufficient evidence.

**{¶48}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Dickson*, 7th Dist. Columbiana No. 12 CO 50, 2013-Ohio-5293, ¶ 10 citing *State v. Thompkins*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *Id.* Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Id.* Citing *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *Id.* Citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

**{¶49}** This assignment of error is limited to appellant's conviction for domestic violence. The relevant domestic violence offense, R.C. 2919.25(D)(4), states, in part:

> If the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses, a violation of division (A) or (B) of this section is a felony of the third degree[.]

**{¶50}** R.C. 2919.25(D)(3), relevant to this appeal, pertains to a defendant who previously pled guilty to or was convicted of domestic violence or a violation of law that is substantially similar to domestic violence.

**{¶51}** Appellant only challenges the element of two or more violations or offenses pursuant to R.C. 2919.25(D)(4). He argues that, because the convictions in the prior criminal case are contained in a single judgment entry, they should be counted as only one violation or offense.

Case No. 19 CO 0001

**{¶52}** Appellant cites no case law in support of this argument. But appellant argues that the expungement statute, codified at R.C. 2953.31, treats multiple convictions contained in a single judgment entry as one conviction. The expungement statute states, in relevant part:

> When two or more convictions result from or are connected with the same act or result from offenses committed at the same time, they shall be counted as one conviction. When two or three convictions result from the same indictment, information, or complaint, from the same plea of guilty, or from the same official proceeding, and result from related criminal acts that were committed within a three-month period but do not result from the same act or from offenses committed at the same time, they shall be counted as one conviction[.]

R.C. 2953.31(A)(1)(b).

**{¶53}** Appellant's reliance on the expungement statute lacks merit. As appellant points out, this statute applies to expunging criminal records. It does not apply to the issue appellant raises in this assignment of error. Viewing the evidence in the light most favorable to the prosecution, a grand jury indicted appellant in the prior criminal case with aggravated murder and intimidation of a witness or victim where the alleged victim in both offenses was appellant's wife. Appellant was later convicted of involuntary manslaughter and intimidation of a witness or victim, with the victim being appellant's wife. Because appellant has two prior violations or offenses where he was related to the victim and the prior violations or offenses are substantially similar to domestic violence, his conviction for domestic violence is supported by sufficient evidence.

**{¶54}** Accordingly, appellant's fourth assignment of error is without merit and is overruled.

**{¶55}** Appellant's fifth assignment of error states:

> APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Case No. 19 CO 0001

**{¶56}** Appellant argues that discrepancies in witnesses' testimony, Hayes' failure to appear for trial, the lack of trustworthiness regarding Hayes' statements admitted at trial, and the inconclusiveness of Hayes' injuries in the photographs submitted at trial render his domestic violence conviction as against the manifest weight of the evidence. Appellant also argues that the majority of evidence submitted at trial indicates that he did not knowingly possess cocaine.

**{¶57}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390, 678 N.E.2d 541.

**{¶58}** *Thompkins* addressed a manifest weight argument in the context of a jury trial. But the standard of review is equally applicable when reviewing a manifest weight challenge from a bench trial. *State v. Layne*, 7th Dist. Mahoning No. 97 CA 172, 2000 WL 246589, at *5 (Mar. 1, 2000). A reviewing court will not reverse a judgment as being against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Hill*, 7th Dist. Mahoning No. 09-MA-202, 2011-Ohio-6217, ¶ 49, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988).

**{¶59}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. Belmont No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d

195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99-CA-149, 2002-Ohio-1152.

**{¶60}** Beginning with appellant's domestic violence conviction, he points to potential discrepancies in the trial testimony. First, appellant points out that Spann testified she did not see appellant choking Hayes. (Tr. 86, 96-97). But J.D., who walked into the house at the same time as Spann, testified that she did see appellant choking Hayes. (Tr. 132-134).

**{¶61}** A review of the transcript shows that this is not a discrepancy. J.D. testified that she walked into the house first and Spann was behind her. (Tr. 135). Once Hayes moved to the couch, Spann then moved beside J.D. (Tr. 135). This accounts for why Spann did not see appellant choke Hayes but J.D. did.

**{¶62}** Next, appellant argues that there is a discrepancy between J.D.'s trial testimony and a prior written statement from J.D. J.D.'s prior written statement was not admitted into evidence at trial and J.D.'s testimony about her prior written statement was limited:

> **Q:** All right. And, I believe, when you wrote your statement - - do you recall what you said in your statement?
>
> **A:** Yes.
>
> **Q:** Did you say that [appellant] was on top of [Hayes], pulling her hair, trying to take her money?
>
> **A:** Yes.
>
> **Q:** "Then she told me." So you didn't see anything else except him trying to get her money?
>
> **A:** Yes, I did.
>
> **Q:** So the statement is wrong?

Case No. 19 CO 0001

**A:** I seen his arm on her chest, on her throat.

(Tr. 148-149).

**{¶63}** The limited testimony about J.D.'s prior written statement is not sufficient to create a discrepancy with J.D.'s trial testimony. Moreover, to the extent there is a discrepancy, the trier of fact is in the best position to determine the credibility of the witnesses. *Hill*, 75 Ohio St.3d 195, 205.

**{¶64}** Next, appellant argues that because Hayes did not testify at trial, his conviction is against the manifest weight of the evidence. The Eighth District decided a similar issue in *State v. Smith*, 8th Dist. Cuyahoga No. 107773, 2019-Ohio-2574. In *Smith*, Smith argued that his convictions for attempted murder, felonious assault, and domestic violence were against the manifest weight of the evidence, in part, because the victim did not testify at trial. *Id.* at ¶ 16-17. The Eighth District held that because the state presented other evidence, including eyewitness testimony, upon which the jury could find appellant guilty, his convictions were not against the manifest weight of the evidence. *Id.* at ¶ 17.

**{¶65}** In this case, several pieces of evidence were admitted at trial which indicates appellant attacked Hayes, including: Spann's testimony that Hayes said appellant had choked her; J.D.'s testimony that she saw appellant choking Hayes; three photographs of Hayes' injuries that were taken on the night of the offense; Officer Adkin's, Spann's and J.D.'s testimony that Hayes' shirt had been stretched by the neck and ripped; and Officer Adkins' testimony that he witnessed newer injuries on Hayes. Because the trial court had evidence that appellant committed domestic violence against Hayes, the lack of Hayes' testimony does not render appellant's conviction as against the manifest weight of the evidence.

**{¶66}** Next, appellant argues that the inconclusiveness regarding Hayes' injuries renders his conviction as against the manifest weight of the evidence. Appellant points to Officer Adkins' testimony to support this argument. Officer Adkins testified that Hayes had some bruises on left side of her face and on the upper part of her chest. But Officer Adkins concluded that those bruises "were in the later stages of healing. [They] weren't from that incident." (Tr. 42).

Case No. 19 CO 0001

**{¶67}** Appellant argues that the only injury Officer Adkins attributed to a recent assault against Hayes was a red line or mark that was on the back of her neck. But this is not entirely accurate. Officer Adkins did notice newer bruises on Hayes. While Officer Adkins did not testify about how Hayes sustained the newer bruises, Hayes informed Officer Adkins about how she received the newer bruises, and that information caused "additional concern regarding the incident". (Tr. 45).

**{¶68}** Moreover, the new red line combined with the newer bruises, as well as testimony from Spann and J.D. that appellant choked Hayes, is sufficient to allow the trier of fact to reasonably conclude that appellant assaulted Hayes.

**{¶69}** Appellant also argues that his possession of cocaine conviction was against the manifest weight of the evidence. After Officer Adkins instructed Officer Watkins to place appellant under arrest, Officer Watkins placed appellant in handcuffs and searched him. Officer Watkins searched appellant's pockets, the area around his waist, and legs for "weapons or anything illegal." (Tr. 59). At this time, Officer Watkins observed that appellant's shoes were on properly and tied.

**{¶70}** Officer Watkins then instructed appellant to enter the squad car through the rear passenger side door. When appellant placed his left foot inside the squad car, Officer Watkins noticed a burnt spoon on the passenger side floorboard. Officer Watkins then removed appellant from the squad car, removed the spoon, and searched the back of the squad car. Officer Watkins detected no other items inside the rear of the car and instructed appellant to enter the car. Officer Watkins transported appellant directly to the East Liverpool Police Department.

**{¶71}** When they arrived at the East Liverpool Police Department, Officer Watkins instructed appellant to exit the car. Upon appellant exiting, Officer Watkins noticed appellant's "left foot come out, and his shoe to be halfway on with his heel of the shoe smashed down, and his foot not to be all the way inside the shoe." (Tr. 61). Officer Watkins transported appellant to a secure area inside the police department to conduct a secondary search. The secondary search revealed a white rock in appellant's left shoe that was later determined to be cocaine.

**{¶72}** Appellant argues that this conviction is against the manifest weight of the evidence because Officer Watkins did not inspect the back of his cruiser prior to

Case No. 19 CO 0001

appellant's arrest. Officer Watkins testified that the East Liverpool police officers do not have dedicated or assigned squad cars. Officers typically have the opportunity to inspect the vehicles they use prior to beginning their shifts. Officer Watkins routinely inspects the vehicle he uses prior to beginning his shift but he did not do so on the night of appellant's arrest. Appellant argues that this indicates a possibility that the cocaine was in Officer Watkins' squad car prior to him entering the car and that is how the cocaine ended up in his shoe.

**{¶73}** In this case, the officer searched the back seat prior to placing appellant in the squad car. Also, the observation that appellant's shoes were on and tied appropriately when he was placed in the squad car combined with the fact that cocaine was found in his shoe reasonably supports the conclusion that appellant knew about the cocaine in his shoe. The argument that there may have been cocaine in the back of Officer Watkins' squad car prior to him arresting appellant and said cocaine may have fallen into appellant's shoe is not reasonable. Based on the foregoing, appellant's convictions are not against the manifest weight of the evidence.

**{¶74}** Accordingly, appellant's fifth assignment of error is without merit and is overruled.

**{¶75}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

Case No. 19 CO 0001

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**