[Cite as *State v. Hughes*, 2021-Ohio-2895.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MYCKLE HUGHES,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MA 0116**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 18-CR-851

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Paul Gains*, Prosecutor and *Atty. Ralph Rivera,* Assistant Prosecutor, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Thomas Zena*, 1032 Boardman-Canfield Road, Boardman, Ohio 44512 and *Atty. Douglas Taylor,* Douglas B. Taylor Co., LPA, 11492 Youngstown-Pittsburgh Road, New Middletown, Ohio 44442 for Defendant-Appellant.

Dated:
August 23, 2021

---

**Donofrio, J.**

{¶1}   Defendant-appellant, Myckle Hughes, appeals from a Mahoning County Common Pleas Court judgment overruling his motion to dismiss the aggravated murder, murder, and aggravated robbery charges against him on the grounds of double jeopardy after his initial trial ended in a mistrial.

{¶2}   On August 21, 2018, Sean Bell II was shot and killed in Youngstown. Appellant was implicated in the shooting.

{¶3}   On August 30, 2018 a Mahoning County Grand Jury indicted appellant on one count of aggravated murder, an unspecified felony in violation of R.C. 2903.01(B)(F); one count of murder, an unspecified felony in violation of R.C. 2903.02(A)(D); and aggravated robbery, a first-degree felony in violation of R.C. 2941.145(A); each with a firearm specification.  Appellant pleaded not guilty to the charges.

{¶4}   The case proceeded to trial on September 15, 2020, when a jury was impaneled.  The jury returned to the courthouse the next day on September 16, when the court continued the trial until September 21, 2020. On September 21, the jury and the parties returned.  But after a hearing, the court sua sponte declared a mistrial.

{¶5}   The events leading to the mistrial occurred on September 16, 2020, as jurors were leaving the courthouse.  Several jurors witnessed a disturbance outside of the courthouse that involved the victim's mother and a large crowd of people.  Several jurors overheard the victim's mother crying and yelling saying, "if my child was white and from Poland."  A deputy testified as to what happened. He stated that the disturbance occurred when the jurors were being escorted outside at the same time as the victim's family, who had become emotional inside the courthouse.  Some jurors witnessed the outburst, while others did not.

{¶6}   Juror No. 6 and Alternate Juror No. 2 both admitted that they could not remain fair and impartial after hearing the comments and seeing the incident.  The other

Case No. 20 MA 0116

jurors who witnessed the incident indicated they could remain fair and impartial. But the trial court had concerns that they could still have been influenced by the incident. The court noted that even though the jurors indicated they could remain fair and impartial, their body language indicated otherwise. Based upon this, the court sua sponte declared a mistrial. Appellant objected to the mistrial.

**{¶7}** Upon declaring the mistrial, the court reset the trial to commence November 4, 2020. Appellant subsequently filed a motion to dismiss the case on double jeopardy grounds. The court overruled the motion. Appellant has not yet proceeded to a second trial.

**{¶8}** Appellant filed a timely notice of appeal on November 6, 2020. The denial of a motion to dismiss on double-jeopardy grounds is a final, appealable order. *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 26. He now raises a single assignment of error.

**{¶9}** Appellant's sole assignment of error states:

DENIAL OF THE APPELLANT'S MOTION TO DISMISS VIOLATED HIS PROTECTIONS PURSUANT TO THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS APPLIED BY THE FOURTEENTH AMENDMENT, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

**{¶10}** Appellant argues the trial court should have granted his motion to dismiss. He contends there was not a manifest necessity to declare the mistrial because the court's decision was based upon speculation that its questioning had tainted the jurors. This would mean that appellant could not be tried again on double jeopardy grounds. Appellant argues that a second trial is constitutionally impermissible. He contends that the trial court's decision was based solely on speculation rather than manifest necessity.

**{¶11}** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution ensures that a state may not put a defendant in jeopardy twice for the same offense. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It also "affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.' " *Oregon v. Kennedy*, 456 U.S. 667, 671–672, 102 S.Ct. 2083, 72 L.Ed.2d 416

(1982), quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Nonetheless, this

> valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.

(Footnote omitted.) *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

{¶12} If the trial court sua sponte declares a mistrial, and neither party is at fault for causing the circumstances requiring the mistrial, a retrial is not barred if there was either: "(1) a manifest necessity for ordering a mistrial; or (2) a situation where the ends of public justice would be defeated without the order of mistrial." *State v. Lanier*, 7th Dist. Mahoning No. 06 MA 94, 2007-Ohio-3172, ¶ 19, citing *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988), citing *Washington*, 434 U.S. 497. Manifest necessity does not mean strict necessity but instead a high degree of necessity. *Id.*, citing *Glover*, 35 Ohio St.3d at 19-20.

{¶13} This assignment of error, therefore, depends on our determination of whether there was manifest necessity for the mistrial to be declared over the defendant's objection. An appellate court will not reverse a trial court's decision as to whether there existed a manifest necessity absent an abuse of discretion. *Id.* at ¶ 21, citing *Glover*, 35 Ohio St.3d at 19, 21 (pointing out that the trial court is in the best position to evaluate the situation). Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). We must determine whether the trial court abused its discretion in finding that under the particular circumstances in this case there was a high degree of necessity for a mistrial or that the ends of public justice would be defeated in the absence of a mistrial.

{¶14}   After learning of the disturbance that occurred when the jurors and the victim's family were leaving the courthouse, appellant filed a motion for individual voir dire of the jurors regarding what they may have witnessed.

{¶15}   The trial court asked the jurors if any of them had witnessed the incident. Many of the jurors indicated that they observed at least part of the disturbance.  (Tr. 24). The court and counsel then questioned each of those jurors individually as to what they witnessed and how it might affect them in this case.

{¶16}   Juror 6 stated that when he left the courthouse he saw a large group of people.  (Tr. 25-26).  He observed one woman in particular and heard her yell "if my son wasn't black, this wouldn't have happened" and "if we were from Poland, we wouldn't even be here."  (Tr. 26).  Juror 6 stated he thought these were "foolish" comments to make.  (Tr. 26).  When asked if, during the trial, he saw the person who made these comments would that impact his ability to be fair and impartial, he answered "possibly." (Tr. 57).  He opined that her comments were "unnecessary" and that she should not be sitting in the courtroom.  (Tr. 57-58).  Juror 6 stated that he was "turned off" by the incident and it might affect the way he judged the evidence or viewed certain people's testimony. (Tr. 59).

{¶17}   Juror 7 indicated that she saw a group of women gathered in front of the courthouse, which she thought was a bit strange.  (Tr. 28).  She noticed that one person in the group was crying hysterically.  (Tr. 29).  She stated that she "felt like it was put on for the jurors."  (Tr. 29).  Juror 7 indicated that she could still remain fair and impartial. (Tr. 29).

{¶18}   Juror 8 stated that when she was leaving the courthouse, she heard a lot of noise and saw a group of people; however, she could not make out what they were saying.  (Tr. 32).  She stated that nothing about the incident would affect her in this case. (Tr. 33).

{¶19}   Alternate Juror 1 stated that she was sitting on a bench outside when she heard people yelling and screaming.  (Tr. 34).  She saw at least three African Americans. (Tr. 34-35).  She assumed the people were with appellant.  (Tr. 35).  She stated that because she assumed they were with appellant, it made her "kind of fearful" and uncomfortable.  (Tr. 36).  She sensed that they were very angry.  (Tr. 38).  The court

assured Alternate Juror 1 that the group was not associated with appellant. (Tr. 36). Alternate Juror 1 indicated to the court that her observations might impact her ability moving forward. (Tr. 37). She stated that she was afraid of making a decision in this case due to what she observed. (Tr. 39).

{¶20} Juror 10 stated that when he was leaving the courthouse he saw a group of people with one lady who was upset. He heard her screaming that "if this was a white kid from Poland, he would be home." (Tr. 41). Based on what he heard, Juror 10 attributed the statement to appellant. (Tr. 42). The court informed him that the person who made the statement was not associated with appellant. (Tr. 42-43). Juror 10 indicated that what he observed would not affect his ability to remain fair and impartial. (Tr. 43-44).

{¶21} Alternate Juror 2 stated that she heard some ladies yelling when she exited the courthouse. (Tr. 46). She overheard them say something to the effect of "we're in this situation because of white people from Poland anyway". (Tr. 46-47). She stated she did not realize that it had to do with this case until the court asked about it. (Tr. 47). Alternate Juror 2 indicated that nothing about what she observed would impact her ability to sit as a juror. (Tr. 47).

{¶22} Juror 12 stated that she heard someone yell as she was leaving the courthouse but she could not make out what the person said. (Tr. 49). She stated nothing about the incident would affect her ability to be fair and impartial. (Tr. 51).

{¶23} After hearing from these jurors, the trial court declared a mistrial. The court noted that two jurors acknowledged that they might not be able to remain fair and impartial. It also noted that at least two other jurors "displayed discomfort at the questions being asked, and [the] Court had concerns about their candor." (November 5, 2020 Judgment Entry). The court also expressed concerns that, by questioning the jurors, it had planted ideas in their minds that the incident was directly related to this case and could potentially prejudice either appellant or the state. It determined that the jurors were not being candid, that it would be prejudicial to both sides to continue with the trial, that there was a manifest necessity for a mistrial, and the ends of public justice would otherwise be defeated if it did not grant a mistrial.

Case No. 20 MA 0116

{¶24}  "[A] trial judge's determination of possible juror bias should be given great deference only upon the appellate court's satisfaction that the trial judge exercised sound discretion in determining whether juror bias existed and whether it could be cured." *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 29.

{¶25}  Here, we find that the trial court exercised sound discretion in determining that juror bias existed and could not be cured.  The court and counsel took the time to question each juror individually as to exactly what they observed and how it might have affected them.  One juror and one alternate stated that their ability to remain fair and impartial was affected.  And the trial court had doubts as to at least two other jurors' candor as to their ability to remain fair and impartial based on their body language.  The trier of facts sits in the best position to judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor.  *State v. Williams*, 7th Dist. Columbiana No. 19 CO 0001, 2020-Ohio-3359, ¶ 59.  This same principle would also apply to the trial court who was observing the jurors while they were being questioned and evaluating their candor as to whether they could remain fair and impartial.  Moreover, appellant's trial had just begun.  The jury had been impaneled but no evidence had yet been presented.

{¶26}  Given that at least two, and likely more jurors' ability to remain fair and impartial was affected by the incident they observed, we cannot conclude that the trial court's finding of a manifest necessity to declare a mistrial was an abuse of discretion.

{¶27}  Because we cannot find that the trial court abused its discretion in finding that a manifest necessity existed to declare a mistrial, jeopardy did not attach and the Double Jeopardy Clause does not bar appellant's re-prosecution.

{¶28}  Accordingly, appellant's sole assignment of error is without merit and is overruled.

{¶29}  For the reasons stated above, the trial court's judgment in hereby affirmed.


Waite, J., concurs.
Robb, J., concurs.


Case No. 20 MA 0116

———————————

For the reasons stated in the Opinion rendered herein, the sole assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**